IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-566-D

| | | |
|---|---|---|
| TIFFANIE HOGANS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | **ORDER** |
| v. | ) ) | |
| CHARTER COMMUNICATIONS, INC., d/b/a SPECTRUM, | ) ) ) | |
| Defendant. | ) ) | |

On October 27, 2020, Tiffanie Hogans ("Hogans" or "plaintiff") filed a complaint against

Charter Communications, Inc. ("Charter" or "defendant") alleging violations of the Telephone

Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") [D.E. 1]. Hogans also seeks class

certification. See id. On January 11, 2021, Charter moved to dismiss the complaint and to strike

Hogan's class allegations [D.E. 16] and filed a memorandum in support [D.E. 16-1]. On February

15, 2021, Hogans responded in opposition to Charter's motion [D.E. 19]. On March 8, 2021,

Charter replied [D.E. 23]. As explained below, the Supreme Court's decision in Barr v. American

Association of Political Consultants, Inc., 140 S. Ct. 2335 (2020) [hereinafter AAPC], does not

expressly or effectively defeat Hogans's individual or putative class claims. Thus, the court denies

Charter's motion to dismiss and denies Charter's motion to strike Hogans's class allegations.

I.

Hogans is a resident of Fayetteville, North Carolina. See Compl. [D.E. 1] ¶ 6. Charter is a

telecommunications and mass media corporation headquartered in Stamford, Connecticut. See id.

¶ 7. Charter offers its services in North Carolina under the "Spectrum" brand. See id. ¶ 8.

In January 2020, Hogans obtained a new cell phone number. See id. ¶ 9. About the same time, Hogans began receiving unsolicited calls and voice mail messages from Charter, though she is not a Charter customer. See id. ¶¶ 11–22, 31; [D.E. 19] 13 n.4. The calls came from various numbers. See Compl. ¶¶ 12, 14. Some, if not all, of the calls and voice mail messages were intended for a recipient other than Hogans. See id. ¶¶ 18–19. Hogans attempted to return Charter's calls to explain that the calls were made to a wrong number, but she was unable to speak with a Charter representative. See id. ¶¶ 20–22.

Additionally, Hogans received numerous text messages from Charter. See id. ¶¶ 11, 23–26; Ex. A [D.E. 1-1]. Hogans twice replied "STOP" to these text messages and both times received a reply text message confirming she would receive no further text messages. See Compl. ¶¶ 23, 26. However, Hogans received additional text messages. See id. ¶¶ 25, 27. In total, Hogans received approximately 50 phone calls, 50 text messages, and 10 voice mail messages. See id. ¶ 27. Hogans seeks relief for herself for the time period beginning in January 2020. See id. ¶¶ 9–48, 80–84. Hogans seeks to represent and obtain relief for three classes for the time period from October 26, 2016, through the date of class certification. See id. ¶¶ 49–84.

On October 27, 2020, Hogans filed suit against Charter alleging TCPA violations. See id. ¶¶ 80–84. Charter seeks dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and moves to strike Hogans's class allegations. See [D.E. 16]. Hogans opposes Charter's motion. See [D.E. 19].

## II.

A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc.,

2

669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarrantano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [her] claims, Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

3

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). A court may also consider "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); see Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The court must also address Hogans's class allegations. A plaintiff seeking class certification under Federal Rule of Civil Procedure 23 must first satisfy Rule 23(a)'s prerequisites. Under Rule 23(a), class certification is appropriate if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If a plaintiff has satisfied the Rule 23(a) prerequisites, the plaintiff then also must show that "class certification is proper under one of the subdivisions of Rule 23(b)." McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 475 (E.D.N.C. 2010); see Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). The party seeking class certification bears the burden of proof. See Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001); McLaurin, 271 F.R.D. at 475.

4

A motion to dismiss a complaint's class allegations should be granted when it is clear from the face of the complaint that the plaintiff cannot meet Rule 23's requirements for certification because the plaintiff has failed to properly allege facts sufficient for a class. See Bigelow v. Syneos Health, LLC, No. 5:20-CV-28-D, 2020 WL 5078770, at *4 (E.D.N.C. Aug. 27, 2020) (unpublished); Williams v. Potomac Fam. Dining Grp. Operating Co., No. GJH-19-1780, 2019 WL 5309628, at *5 (D. Md. Oct. 21, 2019) (unpublished). Generally, however, courts do not dismiss class allegations at the pleadings stage but instead allow for pre-certification discovery before making a certification decision under Federal Rule of Civil Procedure 23(c)(1). See Mills v. Foremost Ins. Co., 511 F.3d 1300, 1309 (11th Cir. 2008); Goodman v. Schlesinger, 584 F.2d 1325, 1332 (4th Cir. 1978).

## A.

Charter cites Creasy v. Charter Communications, Inc., 489 F. Supp. 3d 499 (E.D. La. 2020), and argues collateral estoppel bars Hogans's claims. See [D.E. 16-1] 7–9. The doctrine of "collateral estoppel" or "issue preclusion" is a subset of the res judicata genre. See In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004); SEC v. Peters, No. 5:17-CV-630-D, 2021 WL 1112387, at *3 (E.D.N.C. Mar. 22, 2021) (unpublished). "Applying collateral estoppel forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." In re Microsoft Corp., 355 F.3d at 326 (alteration and quotation omitted); see Sedlack v. Braswell Servs. Grp., Inc., 134 F.3d 219, 224 (4th Cir. 1998). Collateral estoppel applies if the proponent demonstrates:

> (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution

5

of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

In re Microsoft Corp., 355 F.3d at 326; see E. Assoc. Coal Co. v. Dir., Off. of Worker's Comp. Programs, 578 F. App'x 165, 173 (4th Cir. 2014) (per curiam) (unpublished); Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006); Tuttle v. Arlington Cnty. Sch. Bd., 195 F.3d 698, 703 n.6 (4th Cir. 1999); Sedlack, 134 F.3d at 224.

Collateral estoppel may "bar relitigation . . . of subject-matter jurisdiction." Barna Conshipping, S.L. v. 2,000 Metric Tons, More or Less, of Abandoned Steel, 410 F. App'x 716, 720 (4th Cir. 2011) (per curiam) (unpublished); see Carr v. Tillery, 591 F.3d 909, 916–17 (7th Cir. 2010); Muñiz Cortes v. Intermedics, Inc., 229 F.3d 12, 14 (1st Cir. 2000). "A dismissal for lack of standing—or any other defect in subject-matter jurisdiction—must be one without prejudice." S. Walk at Broadlands Homeowner's Ass'n, Inc. v. Openband at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013). "The general rule is that a dismissal without prejudice operates to leave the parties as if no action had been brought at all." Dove v. CODESCO, 569 F.2d 807, 809 n.3 (4th Cir. 1978); see In re Matthews, 395 F.3d 477, 483 (4th Cir. 2005). A jurisdictional dismissal is not a "judgment on the merits for the purposes of res judicata." Goldsmith v. Mayor of Balt., 987 F.2d 1064, 1069 (4th Cir. 1993). "However, a jurisdictional dismissal . . . still operates to bar relitigation of issues actually decided by that former judgment." United States ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 912 n.2 (4th Cir. 2013) (quotation omitted). Accordingly, dismissal for lack of subject-matter jurisdiction should not bar relitigation of the same claim in a court of competent jurisdiction, but collateral estoppel "ordinarily should preclude relitigation of the same issue of subject-matter jurisdiction in a second federal suit on the same claim." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4402 (3d ed. 2021); see Barna Conshipping,

6

410 F. App'x at 720; Muñiz Cortes, 229 F.3d at 14. Thus, "a dismissal can be one without prejudice yet have preclusive effect." Carr, 591 F.3d at 917.

In Creasy, the court held that it lacked subject-matter jurisdiction over the plaintiffs' claims due to the Supreme Court's decision in AAPC. See Creasy, 489 F. Supp. 3d at 506–08. Because the Creasy court's holding was essential to granting Charter's motion to dismiss and because Hogans had a full and fair opportunity to litigate subject-matter jurisdiction in that case, Charter argues that collateral estoppel applies. See [D.E. 16-1] 7–9.

Hogans responds that because the United States Court of Appeals for the Fourth Circuit had severed the government-debt exception from 42 U.S.C. § 227(b)(1)(A)(iii) when Hogans received the phone calls, voice mail messages, and text messages at issue, the remedied robocall ban was already in effect as to her claims. See [D.E. 19] 11–13; Am. Ass'n of Pol. Consultants v. FCC, 923 F.3d 159, 172 (4th Cir. 2019), aff'd, 140 S. Ct. at 2356. During that same time period, the United States Court of Appeals for the Fifth Circuit, which encompasses the Eastern District of Louisiana, had not addressed the government-debt exception's constitutionality. See [D.E. 19] 11. Thus, according to Hogans, even if the Creasy court lacks subject-matter jurisdiction for her claims arising during the relevant period of time, courts in the Fourth Circuit do not lack subject-matter jurisdiction. See id. at 11–13. Because dismissal for lack of subject-matter jurisdiction should not bar litigating the same claims in a court that has subject-matter jurisdiction, Hogans argues that collateral estoppel does not bar her claims in this court. See id. at 13–14. Charter disagrees. See [D.E. 23] 6–8.

In Creasy, the parties litigated, and the court resolved, whether the court had subject-matter jurisdiction over Hogans's claims. See Creasy, 489 F. Supp. 3d at 506–08. Hogans was a party to the case and had a full and fair opportunity to litigate subject-matter jurisdiction. See [D.E. 16-2].

7

Moreover, Judge Martin Feldman issued a valid order of partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) to adjudicate Charter's motion to dismiss. See [D.E. 16-3]. That order dismissed without prejudice for lack of subject-matter jurisdiction Hogans's claims for phone calls, voice mail messages, and text messages between January and July 2020 . See id.; [D.E. 16-2] ¶¶ 43–61.

Charter has failed to demonstrate the elements necessary for collateral estoppel to apply. The issue "previously litigated" in Creasy is not "identical" to the issue Hogans raises here. In re Microsoft Corp., 355 F.3d at 326; see E. Assoc. Coal, 578 F. App'x at 173; Collins, 468 F.3d at 217. Hogans alleges that she received Charter's phone calls, voice mail messages, and text messages on or after January 2020 and while she was in North Carolina. See Compl. ¶¶ 6, 9–27. During the time period when Hogans received these communications, the Fourth Circuit had already held the government-debt exception invalid. See Am. Ass'n Pol. Consultants, 923 F.3d at 170. The Fourth Circuit's judgment took effect on July 1, 2019. See Mandate, Am. Ass'n Pol. Consultants, No. 18-1588 (4th Cir. July 1, 2019), ECF No. 45. When the parties appealed the Fourth Circuit's ruling, neither party asked the Fourth Circuit or the Supreme Court to stay the Fourth Circuit's mandate. See 28 U.S.C. § 2101(f); Sup. Ct. R. 23; Fed. R. App. P. 41(d). In Creasy, the court did not address what effect, if any, the Fourth Circuit's decision in AAPC had on this court's jurisdiction or the validity of Hogans's claims. Cf. Creasy, 489 F. Supp. 3d at 506–08. And in his order granting partial final judgment, Judge Feldman expressly declined to consider that issue. See [D.E. 16-3] 6 n.2. Thus, the issue decided in Creasy and the issue presented here are not identical. Accordingly, collateral estoppel does not bar Hogans's claims.

8

B.

Charter contends the court lacks subject-matter jurisdiction over Hogans's claims because Hogans's complaint does not allege a justiciable case or controversy arising under the Constitution or a federal statute. See [D.E. 16-1] 9–10. Specifically, Charter contends that the Supreme Court's decision in AAPC deprives the court of subject-matter jurisdiction. See id. at 11–15. Hogans disagrees. See [D.E. 19] 15–23.

Charter's arguments do not implicate the court's subject-matter jurisdiction but rather whether Hogans has stated a claim upon which this court can grant relief. Under 28 U.S.C. § 1331, a federal court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A claim generally arises under federal law when federal law creates the cause of action. See, e.g., Gunn v. Minton, 568 U.S. 251, 257 (2013); Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005).

When assessing subject-matter jurisdiction, a court must take care to maintain "the distinction between two sometimes confused or conflated concepts: federal-court 'subject-matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief." Arbaugh v. Y & H Corp., 546 U.S. 500, 503 (2006); see Stewart v. Iancu, 912 F.3d 693, 700 (4th Cir. 2019). A rule is not jurisdictional "unless it governs a court's adjudicatory capacity." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 435 (2011); see Holloway, 669 F.3d at 453. "Other rules, even if important and mandatory . . . should not be given the jurisdictional brand." Henderson, 562 U.S. at 435. Thus, a "rule is jurisdictional 'if the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional.'" Gonzalez v. Thaler, 565 U.S. 134, 141–42 (2012) (alteration omitted) (quoting Arbaugh, 546 U.S. at 515); see Staudner v. Robinson Aviation, Inc., 910 F.3d 141, 146–47 (4th Cir. 2018); United States v. Welsh, 879 F.3d 530, 534 (4th Cir. 2018).

9

Otherwise, a rule is nonjurisdictional. See Gonzalez, 565 U.S. at 141–42; Staudner, 910 F.3d at 146–47; Welsh, 879 F.3d at 534. "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." Steel Co., 523 U.S. at 89 (quotation omitted); see Oneida Indian Nation of N.Y. v. Cnty of Oneida, 414 U.S. 661, 666–67 (1974).

"In short, subject matter jurisdiction relates to a federal court's power to hear a case, and that power is generally conferred by the basic statutory grants of subject matter jurisdiction, such as 28 U.S.C. § 1331 or 28 U.S.C. § 1332." Holloway, 669 F.3d at 453 (cleaned up). "If a plaintiff invoking § 1331 pleads a colorable claim arising under the Constitution or laws of the United States, he invokes federal subject matter jurisdiction, and deficiencies of the claim should be addressed by the other mechanisms provided by the federal rules." Id.

For example, in Arbaugh, the Supreme Court considered whether the employee-numerosity requirement in Title VII, which defines an "employer" for purposes of Title VII as someone who employs fifteen or more people, is a jurisdictional requirement or an element of the claim for relief. See Arbaugh, 546 U.S. at 509. The Court held it was an element of the claim for relief. See id. at 516. In so holding, the Court noted that the employee-numerosity requirement was in a separate provision from Title VII's jurisdictional provision. See id. at 515; see also Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 164–65 (2010) (relying on the separateness of the provisions in a similar suit). Additionally, the provision in which it appeared "[did] not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." Arbaugh, 546 U.S. at 515 (quotation omitted); see Reed Elsevier, 559 U.S. at 165 (examining whether the provision spoke in jurisdictional terms). The Court concluded that "when Congress does not rank a statutory limitation

10

on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."
Arbaugh, 546 U.S. at 516.

Hogans's complaint properly invokes the court's subject-matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227(b)(3). Section 227(b)(3) creates a private cause of action for litigants seeking redress for violations of section 227. See 47 U.S.C. § 227(b)(3). Accordingly, the private cause of action in section 227(b)(3) arises under federal law and confers federal question jurisdiction to hear disputes between private litigants over TCPA violations. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 376–79 (2012) (construing section 227(b)(3) as granting concurrent jurisdiction to federal and state courts to hear cases alleging violations of section 227).

Hogans invokes the section 227(b)(3) private cause of action to allege that Charter violated 47 U.S.C. § 227(b)(1)(A)(iii). See Compl. ¶¶ 80–84. Section 227(b)(1)(A)(iii) contains the elements that Hogans must plead to allege a valid violation of the TCPA's robocall ban. It is a separate provision from the section 227(b)(3) grant of jurisdiction, and it "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." Arbaugh, 546 U.S. at 515 (quotation omitted); see Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982). Whether Hogans has pleaded facts occurring within a time period in which the statute is enforceable is a question of the factual and legal sufficiency of Hogans's complaint, not subject-matter jurisdiction. See Lindenbaum v. Realgy, LLC, No. 20-4252, 2021 WL 4097320, at *2 (6th Cir. Sept. 9, 2021).

Charter contends that the unconstitutionality of the robocall ban, when coupled with the government-debt exception, mandates the opposite conclusion for claims arising from the date of the government-debt exception's enactment until the Supreme Court decided AAPC. According to Charter, "[a]n unconstitutional law is void, and is as no law." Ex parte Siebold, 100 U.S. 371, 376 (1879); cf. [D.E. 16-1] 11. That is, "if the laws are unconstitutional . . . [there is] no jurisdiction of

11

the causes." Ex parte Siebold, 100 U.S. at 377. In Siebold, this principle meant the circuit court had no jurisdiction because "[i]ts authority to indict and try the petitioners arose solely upon these laws." Id.

Siebold does not help Charter. Here, this court's jurisdiction arises not from the provision declared unconstitutional in AAPC but from the private cause of action in section 227(b)(3) that grants Hogans standing to bring her claims. Whether AAPC renders Hogans's claims invalid is disputed and does not so conclusively foreclose Hogans's claims as to warrant dismissal for lack of subject-matter jurisdiction. See Steel Co., 523 U.S. at 89; Lindenbaum, 2021 WL 4097320, at *2. Instead, the court can address the issue "by the other mechanisms provided by the federal rules." Holloway, 669 F.3d at 453. Thus, the court has subject-matter jurisdiction over this case and denies Charter's motion to dismiss for lack of subject-matter jurisdiction. See id.; Steel Co., 523 U.S. at 89; Lindenbaum, 2021 WL 4097320, at *2.

### C.

Next, the court addresses AAPC's effect on Hogans's claims and whether Hogans has stated a claim under section 227(b)(1)(A)(iii) upon which this court can grant relief. Charter argues that because section 227(b)(1)(A)(iii) was unconstitutional when Hogans received the cell phone calls, voice mail messages, and text messages at issue, Charter could not have violated that provision. See [D.E. 16-1] 10–15. According to Charter, the Court's remedy in AAPC— invalidating the government-debt exception to cure the constitutional deficiency in section 227(b)(1)(A)(iii)—only applies prospectively. See [D.E. 16-1] 11–15.

Hogans disagrees, arguing the Court's remedial decision in AAPC applies retroactively. See [D.E. 19] 15–16; Lindenbaum, 2021 WL 4097320, at *2–4. Hogans urges the court to give full effect to the robocall ban for the entire period in Hogans's complaint and notes that this case does

12

not involve the collection of government debt. See [D.E. 19] 15–23. In support, Hogans argues that the government-debt exception was void ab initio and thus never had any effect on the 1991 general robocall ban. See id. at 16–23; Lindenbaum, 2021 WL 4097320, at *2–4. Because it had no effect, Hogans argues, the government debt-exception's deficiencies cannot eliminate Charter's liability for violating the general robocall ban. See [D.E. 19] 20–23. And even if Charter's characterization is correct, Hogans argues that it is irrelevant because the Fourth Circuit had already severed the government-debt exception before Hogans received the phone calls, voice mail messages, and text messages at issue in her individual claims. Hogans argues that prospective application of the Fourth Circuit's decision still renders Charter subject to liability because the Fourth Circuit's decision was in effect when she received the calls and messages at issue. See id. at 16–20.

1.

In AAPC, the Supreme Court granted certiorari to address a two-part question: "Whether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute." Brief for Petitioners at I, AAPC, 140 S. Ct. 2335 (2020) (No. 19-631).[1] Justice Kavanaugh announced the Court's judgment in a fractured plurality opinion. Six Justices concluded that the general robocall ban, when coupled with the government-debt exception, violated the First Amendment. See AAPC, 140 S. Ct. at 2343. To remedy that violation, seven Justices voted to sever the government-debt exception from the TCPA rather than invalidate the general robocall ban in its entirety. See id. at 2343–44.

---

[1] AAPC, who also asked the Supreme Court to grant certiorari, phrased the question presented differently. In relevant part, AAPC stated the question presented as "[w]hether the TCPA's cellphone-call prohibition is an unconstitutional content-based restriction of speech." Brief for Respondents at i, AAPC, 140 S. Ct. 2335 (2020) (No. 19-631).

13

Addressing the first question, the Court asked "whether the robocall restriction, with the government-debt exception, is content-based." Id. at 2346. The Court held it was, and the government conceded the restriction could not withstand strict scrutiny. See id. at 2346–47. Despite construing the two provisions together for purposes of the First Amendment analysis, the Court also held "that the 2015 government-debt exception created an unconstitutional exception to the 1991 robocall restriction." Id. at 2348. It rejected the "plaintiffs' broader initial argument for holding the entire 1991 robocall restriction unconstitutional." Id. at 2349. Thus, the Court held the government-debt exception unconstitutional in light of its effect on the general robocall ban when the two were operating in tandem.

Applying "ordinary severability principles" and a "presumption of severability," the Court remedied the constitutional infirmity by "sever[ing] the 2015 government-debt exception, the constitutionally offending provision." Id. at 2349–54. The Court noted that it had "long applied severability principles in cases like this one, where Congress added an unconstitutional amendment to prior law." Id. at 2353.

To summarize, the Court engaged in a two-step inquiry. First, it interpreted the statute to determine whether a constitutional violation existed. See id. at 2356 ("We hold that the 2015 government-debt exception added an unconstitutional exception to the law."). Second, after finding a constitutional violation, the Court remedied the violation by severing the offending 2015 addition. See id. ("We cure that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute."). This analysis comported with the "[u]sual[]" practice in which "the Court first declares unconstitutional a particular provision of law, and only then does it inquire whether the remainder of the statute can be saved." United States v. Booker, 543 U.S. 220, 282 (2005) (Stevens, J., dissenting); see Seila Law LLC v. Consumer Fin. Prot. Bureau,

14

140 S. Ct. 2183, 2209 (2020) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." (quotation omitted)); see, e.g., Ayotte v. Planned Parenthood of N. New Eng., 546 U.S. 320, 328–29 (2006); Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 680, 685 (1987); Regan v. Time, Inc., 468 U.S. 641, 648–49, 652 (1984); United States v. Miselis, 972 F.3d 518, 541–42 (4th Cir. 2020).

Although the Court severed the government-debt exception, it did not consider "a question regarding the retroactive effect of statutory severance and took up no such issue." Cunningham v. Matrix Fin. Servs., LLC, No. 4:19-cv-896, 2021 WL 1226618, at *4 (E.D. Tex. Mar. 31, 2021). After all, the plaintiffs in AAPC requested a declaratory judgment that the robocall ban was unconstitutional. See AAPC, 140 S. Ct. at 2345. Indeed, they had not made robocalls during the operative period but only recognized "that their political outreach would be more effective and efficient if they could make robocalls to cell phones." Id.

2.

This court must resolve whether AAPC operates retroactively to render the entire robocall ban ineffective as grounds for liability for the time period alleged in the complaint both as to Hogans (i.e., for robocalls beginning in January 2020) and the putative classes (i.e., for robocalls from October 26, 2016, through the date of class certification). Retroactive application of judicial interpretations of federal law is the norm. "When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's] announcement of the rule." Harper v. Va. Dep't of Tax'n, 509 U.S. 86, 97 (1993); see Etape v. Chertoff, 497 F.3d 379, 387–88 (4th Cir. 2007); Hemelt

15

v. United States, 122 F.3d 204, 208 (4th Cir. 1997). The "judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." Rivers v. Roadway Express, Inc., 511 U.S. 298, 312–13 (1994); see Lindenbaum, 2021 WL 4097320, at *2–4; GTE S., Inc. v. Morrison, 199 F.3d 733, 740 (4th Cir. 1999). This principle ensures that substantive federal law does not "shift and spring" according to the equities inherent in individual cases. Harper, 509 U.S. at 97 (quotation omitted).

Additional considerations apply when analyzing retroactivity. When a legislature amends an existing valid law and the new amendment is unconstitutional, the amendment "is a nullity and, therefore, powerless to work any change in the existing statute." Frost v. Corp. Comm'n, 278 U.S. 515, 526–27 (1929); see Marbury v. Madison, 5 U.S. 137, 177 (1803) ("[A]n act of the legislature, repugnant to the constitution, is void."); Lindenbaum, 2021 WL 4097320, at *2–4. However, "[a]lthough an unconstitutional provision is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment), it is still possible for an unconstitutional provision to inflict compensable harm." Collins v. Yellen, 141 S. Ct. 1761, 1788–89 (2021).

Because unconstitutional provisions can still have real consequences, "the effect of a determination of unconstitutionality must be taken with qualifications." Chicot Cnty. Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 374 (1940). For example, "[a] judicial determination of unconstitutionality . . . does not expunge the affected enactment from the statute books for all purposes." Usery v. Charleston Cnty. Sch. Dist., 558 F.2d 1169, 1171 (4th Cir. 1977); see Chicot, 308 U.S. at 374. Stated differently, "[t]he past cannot always be erased by a new judicial declaration." Chicot, 308 U.S. at 374. The "actual existence" of the unconstitutional statute "is an operative fact and may have consequences which cannot justly be ignored." Id.; see NLRB v.

16

Rockaway News Supply Co., 345 U.S. 71, 77 (1953) ("Even where a statute is unconstitutional and hence declared void as of the beginning, this Court has held that its existence before it has been so declared is not to be ignored.").

As explained, the Supreme Court held that the government-debt exception, operating in tandem with the robocall restriction, was unconstitutional. See AAPC, 140 S. Ct. at 2343. Thus, the government-debt exception was unconstitutional from the date of its enactment until the Court remedied the constitutional deficiency by severing the government-debt exception from the statute.

In AAPC, a majority of the Court left unanswered the question of retrospective liability under section 227(b)(1)(A)(iii) for the time period in which it was unconstitutional. Three possible answers to that question exist. First, a court could subject all robocalls, including those to collect government debt, to retrospective liability. See Brief of Amici Curiae Constitutional Law Professors, et al. at 8, Lindenbaum, No. 20-4252 (6th Cir. Mar. 18, 2021), 2021 WL 4097320.[2] Second, a court could subject all robocalls to liability but exempt from liability calls to collect government debt. See id. at 8–9. Third, a court could conclude "there can be no liability under the TCPA's robocall ban during the operative period." Id. at 9.

The first solution would subject all robocalls during the operative period to liability, including those to collect government debt. However, to hold government-debt collectors liable post-AAPC for pre-AAPC robocalls to cell phones would impose liability for conduct that at the time seemed statutorily permitted. As for government-debt collectors, this result appears to contravene "[e]lementary considerations of fairness," which "dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." Landgraf v. USI

---

[2] Charter filed this brief with the court as supplemental authority. See [D.E. 42-3].

Film Prods., 511 U.S. 244, 265 (1994); see Manning v. Caldwell for City of Roanoke, 930 F.3d 264, 273–74 (4th Cir. 2019) (en banc); Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 108 (4th Cir. 2001); Tasios v. Reno, 204 F.3d 544, 550 (4th Cir. 2000); cf. INS v. St. Cyr, 533 U.S. 289, 321 (2001) ("As we have repeatedly counseled, the judgment whether a particular statute acts retroactively 'should be informed and guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations."'" (quoting Martin v. Hadix, 527 U.S. 343, 345 (1999))), superseded on other grounds by 8 U.S.C. § 1252. At least three Justices in AAPC recognized this issue, and Justice Kavanaugh wrote for a plurality in footnote 12 that "no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate." AAPC, 140 S. Ct. at 2355 n.12.

The second solution addresses the fair notice concern by subjecting all robocalls to liability, except for those made to collect government debt. At least three Justices in AAPC appear to have contemplated this result by suggesting that government-debt-collection calls made during this time are exempt from liability and then concluding in the same footnote that the decision "does not negate the liability of parties who made robocalls covered by the robocall restriction." Id. On one hand, this result makes sense given that defendants such as Charter should have known their robocalls were not to collect government debt and were therefore prohibited by the general ban. On the other hand, during a portion of the putative class period at issue here, Charter's actions were prohibited by a general ban that operated in tandem with an exception that rendered the general provision an impermissible content-based restriction on speech. Cf. Grayned v. City of Rockford, 408 U.S. 104, 107 & n.2 (1972) (vacating a defendant's conviction after "consider[ing] the facial constitutionality of the [law] in effect" at the time of the defendant's arrest despite a later amendment that cured the

18

law's constitutional deficiencies). To impose liability on non-government-debt collectors during this period would thus enforce the same unconstitutional content-based discrimination that the AAPC decision corrects. See AAPC, 140 S. Ct. at 2366 (Gorsuch, J., concurring in the judgment in part and dissenting in part) ("[A] holding that shields only government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate." (emphasis in original)).

Hogans contends that this court must follow footnote 12 because at least five Justices endorsed the footnote's reasoning. See [D.E. 19] 23–26. The court disagrees. See Lindenbaum, 2021 WL 4097320, at *1 n.1. Only three Justices joined Part III of Justice Kavanaugh's opinion, which included footnote 12. See AAPC, 140 S. Ct. at 2343, 2348–56 (plurality opinion). "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Marks v. United States, 430 U.S. 188, 193 (1977) (quotation omitted). Here, the narrowest ground for the decision's remedy is that five Justices agreed to sever the provision without agreeing on why it should be severed or the effect of the severance. Justice Sotomayor agreed "that the offending provision is severable." AAPC, 140 S. Ct. at 2357 (Sotomayor, J., concurring in the judgment). Justices Breyer, Ginsburg, and Kagan similarly agreed "with Justice Kavanaugh's conclusion that the provision is severable." Id. at 2363 (Breyer, J., concurring in the judgment with respect to severability and dissenting in part). The concurring Justices gave no reasoning for their conclusion that the government-debt exception was severable and did not address the issue of retrospective liability.

Having reviewed governing Supreme Court precedent and the Sixth Circuit's recent decision in Lindenbaum, this court holds that AAPC applies retroactively. Federal courts exist to decide

particular cases and controversies by saying what the law is. See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 218–19 (1995); Marbury, 5 U.S. at 177. Severance is a judicial act that declares what the law is, if anything, after the court has identified and disregarded unconstitutional enactments. See Collins, 141 S. Ct. at 1788–89 ("[T]he Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment."); Massachusetts v. Mellon, 262 U.S. 447, 488 (1923) ("[T]he power exercised is that of ascertaining and declaring the law . . . . It amounts to little more than the negative power to disregard an unconstitutional enactment."); Lindenbaum, 2021 WL 4097320, at *2. Severance is a legal interpretation explaining what the law "has meant continuously since the date when it became law." Rivers, 511 U.S. at 313 n.12; see Lindenbaum, 2021 WL 4097320, at *2. This court must apply the governing legal interpretation in AAPC to all cases pending on direct review. See Harper, 509 U.S. at 97; Etape, 497 F.3d at 387–88; Hemelt, 122 F.3d at 208. Because AAPC applies retroactively, the general robocall ban applied during the time period when Hogans alleges that Charter sent her and members of her putative classes the unwanted calls, voice mail messages, and text messages at issue. Thus, under AAPC, Hogans has plausibly alleged that Charter violated the TCPA. Accordingly, the court denies Charter's motion to dismiss under Rule 12(b)(6).

Of course, "[a] judicial determination of unconstitutionality . . . does not expunge the affected enactment from the statute books for all purposes." Charleston Cnty. Sch. Dist., 558 F.2d at 1171. Government-debt collectors may have placed robocalls during the operative period thinking the TCPA permitted them. This court, however, need not address whether government-debt-collecting robocallers have a fair-notice defense to retroactive liability post-AAPC. Here, Hogans alleges that Charter contacted her about Charter's own services, not to attempt to collect government debts. See Compl. ¶¶ 9–48. Thus, the general robocall ban in section 227(b)(1)(A)(iii) prohibited Charter's

20

conduct. Whether government-debt collectors have a fair-notice defense to AAPC's retroactive application is not before the court, and the court does not address it. See Lindenbaum, 2021 WL 4097320, at *4.

3.

Even if the Supreme Court or the Fourth Circuit ultimately determines that AAPC only applies prospectively, it would not doom Hogans's claims. Hogans argues that when she received the phone calls, voice mail messages, and text messages at issue, the Fourth Circuit had already held the government-debt exception invalid. See [D.E. 19] 16–20; see also Am. Ass'n Pol. Consultants, 923 F.3d 159 at 170. Charter responds that until the Supreme Court issued its decision, the Fourth Circuit's ruling had not conclusively "correct[ed] the TCPA's First Amendment flaw" within the geographic boundaries of the Fourth Circuit's jurisdiction. See [D.E. 23] 6–8. In support, Charter argues, state courts within the Fourth Circuit could still hear TCPA claims and were not bound to follow the Fourth Circuit's holding. See id. at 7.

The Fourth Circuit's judgment took effect on July 1, 2019. See Mandate, Am Ass'n Pol. Consultants, No. 18-1588 (4th Cir. July 1, 2019), ECF No. 45; Fed. R. App. P. 41(c) ("The mandate is effective when issued."); Eric J. Magnuson & David F. Herr, Fed. Appeals Jurisdiction & Prac. § 14:7 (2021 ed.) (noting the mandate "end[s] [] the court of appeals' jurisdiction over the case," thus making the decision final). When the parties appealed the case to the Supreme Court, neither party asked the Fourth Circuit or the Supreme Court to stay the Fourth Circuit's mandate. Cf. 28 U.S.C. § 2101(f); Sup. Ct. R. 23; Fed. R. App. P. 41(d).

"The principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." Tasios, 204 F.3d at 551 (quotation omitted); see Landgraf, 511 U.S. at 265. When the Fourth Circuit issues a decision, it

21

"becomes the law of the circuit and is binding on other panels [and district courts within the circuit] unless it is overruled by a subsequent en banc opinion . . . or a superseding contrary decision of the Supreme Court." United States v. Dodge, 963 F.3d 379, 383 (4th Cir. 2020) (quotation omitted); see United States v. Collins, 415 F.3d 304, 311 (4th Cir. 2005); Etheridge v. Norfolk & W. Ry., 9 F.3d 1087, 1090 (4th Cir. 1993). However, a panel's decision is not binding on state courts. "Though state courts may for policy reasons follow the decisions of the Court of Appeals whose circuit includes their state, they are not obliged to do so." Owsley v. Peyton, 352 F.2d 804, 805 (4th Cir. 1965) (internal citation omitted); see Toghill v. Clarke, 877 F.3d 547, 553 n.4 (4th Cir. 2017).

When a party plans to petition for a writ of certiorari, it "may move to stay of the [Fourth Circuit's decision] pending the filing of a petition . . . . The motion must be served on all parties and must show that the petition would present a substantial question and that there is a good cause for a stay." Fed. R. App. P. 41(d)(1). A stay is not automatic merely because a party seeks Supreme Court review. Instead, a party may move for a stay, and if it is granted, "the stay continues until the Supreme Court's final disposition." Fed. R. App. P. 41(d)(2)(B)(ii). However, "[w]here the prevailing party in the lower court appeals from that court's judgment, the appeal suspends the execution of the decree." Tenn. Valley Auth. v. Atlas Mach. & Iron Works, Inc., 803 F.2d 794, 797 (4th Cir. 1986); see Bronson v. La Crosse & Milwaukee R.R. Co., 68 U.S. 405, 409–10 (1863).

The Fourth Circuit issued a binding decision in AAPC that went into effect because neither party requested a stay after the Fourth Circuit denied en banc review. Thus, during the time period between July 1, 2019, and the Supreme Court's decision, the Fourth Circuit's decision was the law of the circuit. Furthermore, both parties appealed the Fourth Circuit's ruling. See AAPC, 140 S. Ct. at 2345–46. However, neither party was a prevailing party. The Government did not prevail because the Fourth Circuit invalidated a federal statute. AAPC was not a prevailing party because it did not

22

obtain the relief it sought. See Am. Ass'n of Pol. Consultants, Inc. v. Wilkinson, 518 F. Supp. 3d 881, 889 (E.D.N.C. 2021); see also Am. Ass'n Pol. Consultants, 923 F.3d at 170–71.

Some courts have declined to apply a precedent that was currently pending review before a higher court. See, e.g., Garcia v. McEwen, No. CV 11-9145-DDP(OP), 2014 WL 6473593, at *12 n.3 (C.D. Cal. Nov. 17, 2014) (unpublished); State v. Berry, 592 S.W.2d 553, 560 (Tenn. 1980). But the Supreme Court's denial of certiorari "imports no expression of opinion upon the merits of the case." United States v. Carver, 260 U.S. 482, 490 (1923). Similarly, "[a] grant of certiorari does not constitute new law." Ritter v. Thigpen, 828 F.2d 662, 665–66 (11th Cir. 1987); see United States v. Mays, 593 F.3d 603, 607 (7th Cir. 2010) ("The fact that the Supreme Court had granted the writ of certiorari and heard oral arguments . . . was not indicative of a change in [the law] . . . . At most, it signified that a change in the law was possible."). This court must apply the law that existed at the time of Charter's alleged conduct and must follow the Fourth Circuit's decision in AAPC, given it was the controlling precedent and the Supreme Court's decision in AAPC did not undermine it. See Dodge, 963 F.3d at 383; United States v. Stewart, 732 F. App'x 314, 316 (5th Cir. 2018) (per curiam) (unpublished) ("[E]ven when the Supreme Court has granted certiorari in a relevant case, we will continue to follow binding precedent."); Collins, 415 F.3d at 311; Etheridge, 9 F.3d at 1090–91; Wicker v. McCotter, 798 F.2d 155, 158 (5th Cir. 1986).

Even if the Supreme Court's decision in AAPC only applies prospectively, the court would not dismiss Hogans's claims entirely. Instead, Hogans's claims and the claims of her putative class members would be limited to those arising on or after July 1, 2019.

### D.

Charter contends this court should dismiss Hogans's claims under the first-to-file rule and cites Creasy in support. See [D.E. 16-1] 21–26; [D.E. 23] 17–19. Hogans, however, has dismissed

23

her claims in Creasy, and Charter has advised this court that her doing so "renders Charter's argument for dismissal under the first-to-file doctrine inapplicable." [D.E. 33] 1. Although Charter contends that the doctrine may still apply due to "other first-filed . . .TCPA class actions against Charter," id. at 1 n.2, Charter has not specifically identified those already pending cases. See id.; see also [D.E. 16-1] 21–26; [D.E. 23] 17–19. Thus, the court declines to apply the first-to-file rule.

III.

Charter argues that this court should strike Hogans's class allegations. See [D.E. 16-1] 3. Rule 23 provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Although "[a] court need not wait until class certification is sought to determine whether a party complies with [Rule 23]," Stanley v. Cent. Garden & Pet Corp., 891 F. Supp. 2d 757, 769 (D. Md. 2012), courts ordinarily allow for pre-certification discovery and "rarely make a class determination at the pleading stage." Bigelow, 2020 WL 5078770, at *4.

"[A] motion to dismiss a complaint's class allegations should be granted when it is clear from the face of the complaint that the plaintiff cannot and could not meet Rule 23's requirements for certification because the plaintiff has failed to properly allege facts sufficient to make out a class or could establish no facts to make out a class." Williams, 2019 WL 5309628, at *5 (alteration and quotation omitted). "Imposing this relatively low bar to proceed to discovery is consistent with the principle that a ruling on class certification should normally be based on more information than the complaint itself affords." Id. (quotations omitted).

To be certified, a putative class must meet the four Rule 23(a) prerequisites and fit within one of the three Rule 23(b) categories. See Amchem Prods., 521 U.S. at 614; Berry v. Schulman, 807 F.3d 600, 608 (4th Cir. 2015); In re Outer Banks Power Outage Litig., No. 4:17-CV-141, 2018 WL

24

2050141, at *3 (E.D.N.C. May 2, 2018) (unpublished). Under Rule 23(a), class certification is appropriate if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Hogans's complaint plausibly fits within Rule 23(b)(3). See Compl. ¶¶ 69–70 (alleging issues of law and fact "common to the members of the classes predominate over questions that may affect individual members of the classes"). Rule 23(b)(3) permits a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In other words, Rule 23(b)(3) has two requirements: predominance and superiority. See Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006). As for predominance, common issues of law and fact predominate "where the same evidence would resolve the question of liability for all class members." Beaulieu v. EQ Indus. Servs., Inc., No. 5:06-CV-400-BR, 2009 WL 2208131, at *20 (E.D.N.C. July 22, 2009) (unpublished); see Stillmock v. Weis Mkts., Inc., 385 F. App'x 267, 273 (4th Cir. 2010) (unpublished); Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 428 (4th Cir. 2003). As for superiority, plaintiffs must be able to demonstrate that proceeding as a class "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see Thorn, 445 F.3d at 319.

The court has reviewed the record, the arguments, and the governing law. The court denies Charter's motion to strike Hogans's class allegations.

25

## IV.

In sum, the court DENIES defendant's motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) and DENIES defendant's motion to strike [D.E. 16].

SO ORDERED. This _24_ day of September, 2021.

Dever

**JAMES C. DEVER III**
**United States District Judge**

26