| | |
|---|---|
| TIFFANIE HOGANS, *on behalf of herself and others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., d/b/a SPECTRUM, <br><br> Defendant. | Civil Action No. 5:20-cv-00566-D |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL PURSUANT TO 28. U.S.C. § 1292(b)**

# TABLE OF CONTENTS

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | CHARTER'S MOTION TO CERTIFY IS TIMELY | 2 |
| III. | COLLATERAL ESTOPPEL SHOULD BE CERTIFIED | 3 |
| | 1. Collateral Estoppel Involves a Controlling Question of Law. | 4 |
| | 2. Collateral Estoppel Involves a Substantial Ground for Different Opinions. | 5 |
| | 3. An Appeal on Collateral Estoppel Would Materially Advance the Case. | 7 |
| IV. | WHETHER *AAPC* COMPELS DISMISSAL SHOULD BE CERTIFIED | 7 |
| | 1. *AAPC* Involves a Controlling Question of Law. | 7 |
| | 2. *AAPC* Involves a Substantial Ground for Different Opinions. | 9 |
| | 3. Interlocutory Appeal on *AAPC* Would Materially Advance the Case. | 13 |
| V. | CONCLUSION | 13 |

**I.     INTRODUCTION**

Charter's motion establishes that all of Section 1292(b)'s factors for interlocutory review are satisfied because the Court's order decided two controlling questions of law: Whether collateral estoppel and the Supreme Court's decision in *Barr v. AAPC* compel dismissing all of Plaintiffs' claims. 140 S. Ct. 2335 (2020) ("*AAPC*"). Collateral estoppel should be certified because a substantial ground for difference of opinion exists on whether this Court can re-decide another co-equal district court's decision on the same issue as to the same claims brought by the same Plaintiff against the same Defendant. The *AAPC* issue should likewise be certified because a substantial ground for difference of opinion exists on whether Plaintiff can assert TCPA claims based on a law that was, under this Court's reasoning, unconstitutional at the time of the alleged violations. And interlocutory appeal on both issues would materially advance the case because either one of them could completely eliminate Plaintiff's claims, thus preventing years of protracted litigation that would burden the Court, the parties, and non-parties subject to third party discovery.

Plaintiff's Opposition does not dispute the majority of these points. And the few arguments Plaintiff makes fail to rebut that interlocutory review should be certified here.

First, contrary to Plaintiff's contention, Charter brought the motion within a "reasonable time"—and far sooner than in other cases in this Circuit certifying review. The timing of the motion is especially reasonable given that it has not affected the case schedule or prejudiced Plaintiff and Plaintiff herself has delayed both the resolution of her claims and this motion.

Second, Plaintiff is wrong that the collateral estoppel issue here presents factual issues inappropriate for interlocutory review. It is beyond dispute that the relevant collateral estoppel issue presents a pure question of law, as this Court's order confirms: It did not (and did not need to) consider any evidence in deciding whether collateral estoppel applies. Indeed, a court in this Circuit has held that it would be a "senseless waste" of resources *not* to certify collateral estoppel

1

for appeal to the Fourth Circuit. Plaintiff also relies on Judge Feldman's comments that he would not issue an advisory opinion on the viability of Plaintiff's claims in this District to argue that a substantial ground for difference of opinion does not exist. But Judge Feldman's (correct) decision not to opine on matters not before him is irrelevant because he expressed no opinion on the substance of collateral estoppel. And a substantial ground for different opinions exists on whether Plaintiff can relitigate an issue by raising for the first time here a "new theory" about the Fourth Circuit's decision in *AAPC*, as a Fourth Circuit case rejecting exactly that argument confirms.

Third, Plaintiff tallies the results of cases addressing whether *AAPC* compels dismissal to argue there is no substantial ground for difference of opinion on this issue. But as this Court has held, it must look beyond the surface to the substance of the "arguments" to decide "whether the issue for appeal" should be certified. *Wyeth v. Sandoz, Inc.*, 703 F. Supp. 2d 508, 527 (E.D.N.C. 2010) (Dever, J)). And here, there is unquestionably a substantial ground for difference of opinion on whether Plaintiff can assert claims based on a law that was unconstitutional at the time of the alleged violations, as the following all show: Conflicting views among Supreme Court justices, the Sixth Circuit's disagreement with the district court in *Lindenbaum*, this Court's disagreement with Judge Feldman's decision to dismiss the same complaint, the DOJ's decision to oppose certiorari in *Lindenbaum*, and the failure of *any* court siding with Plaintiff's position to address the absurd unconstitutional results that necessarily follow: that legislatures could pass clearly illegal exceptions to speech restrictions and enforce them against only the disfavored party until the exception is severed. Charter's motion should be granted.

## II. CHARTER'S MOTION TO CERTIFY IS TIMELY

Citing just two out of circuit cases, Plaintiff argues that Charter's motion is untimely. That is wrong, as both the law and facts of this case demonstrate.

Courts in this Circuit have recognized that there is no statutory time limit to move a district

2

court to certify an order for interlocutory appeal. *See, e.g.*, *Coal. For Equity v. Maryland Higher Educ. Comm'n*, 2015 WL 4040425, at *7 (D. Md. June 29, 2015). A party instead need only move "within a reasonable time," and what is "reasonable" depends on the circumstances of the case. *Id.* (quotation omitted). Moving to certify for interlocutory appeal as long as *19 months* after an order has therefore been held timely. *Id.* Here, Charter moved to certify just 55 days after the Court's order—sooner or similar in time to cases in this Circuit granting motions to certify. *Id.* (19 months); *Int. Refugee Assis. Project v. Trump*, 404 F. Supp. 3d 946 (D. Md. August 20, 2019) (48 days); *Gilmore v. Jones*, 2019 WL 4417490 (W.D. Vir. 2019) (34 days).

The circumstances of this case confirm that Charter's motion is timely, as it has not affected the case schedule or prejudiced Plaintiff. Plaintiff's own dilatory conduct demonstrates as much: Plaintiff chose to bring this action first in another district instead of here (where she resides). She then delayed the filing of this duplicative case. And once this case started, Plaintiff delayed the Rule 26(f) conference, which the parties did not have until November 19, 2021—the same day Charter filed its motion to certify. Plaintiff then filed the Rule 26(f) report nearly two weeks later, and no scheduling order has been entered. ECF 60. Plaintiff also obtained a 14-day extension to respond to Charter's motion and agreed to a similar extension for Charter's reply. ECF 59. By doing so, Plaintiff conceded that there was no need to "expedite" a ruling. In addition, Charter informed Plaintiff's counsel that Charter would be filing the motion in November, and Plaintiff did not object, much less claim that the motion would be untimely. Plaintiff's baseless suggestion that Charter "may be seeking to avoid an unfavorable ruling, rather than expedite" the resolution of controlling questions is therefore squarely contradicted by the record and Plaintiff's own dilatory conduct. Plaintiff's timeliness argument has no merit.

### III. COLLATERAL ESTOPPEL SHOULD BE CERTIFIED

All three requirements to certify an appeal on collateral estoppel grounds are satisfied.

3

### 1. Collateral Estoppel Involves a Controlling Question of Law.

Charter's motion established that collateral estoppel involves a controlling question of law because if Plaintiff cannot relitigate another district's prior holding that a federal court lacks subject matter jurisdiction, this Court must also dismiss her claims.

The Opposition's only argument otherwise (at 6) is that collateral estoppel is not a question of "law" because it would require the Court to "determine the facts." But Plaintiff does not identify *any* factual disputes that the Court resolved—because there are not any. In ruling on whether collateral estoppel precludes Plaintiff from relitigating subject matter jurisdiction, the Court did not make any factual findings or even consider any evidence. It instead simply analyzed legal authorities on collateral estoppel and the Eastern District of Louisiana's order holding that it lacked subject matter jurisdiction in light of *AAPC*. *See generally* ECF 54 at 5-8. Plaintiff's own authority (which did not address collateral estoppel despite the Opposition's misleading suggestion otherwise) likewise confirms that collateral estoppel is a controlling question of law. The Opposition concedes that "controlling" questions of law include questions about a "common law doctrine." ECF 62 at 6-7 (quoting *Feinberg v. T. Rowe Price*, 2021 WL 2784614, at *2 (D. Md. July 2, 2021)). "[P]rinciples of collateral estoppel" are, of course, "*determined by federal common law*." *In re Muhs*, 923 F.3d 377, 385 (4th Cir. 2019) (emphasis added).

Indeed, collateral estoppel has been held to be especially appropriate to certify for appeal because "[n]othing is more central to the proper structuring" of a case than whether a party "is entitled to relitigate" prior judgments. *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 742 (D. Md. 2003). "There would" thus "be a senseless waste of private and public resources and an unconscionable delay in the final resolution of these proceedings if the Fourth Circuit were not given the opportunity to decide the collateral estoppel issues on an interlocutory appeal and ultimately were to find" that this Court erred in its "ruling." *Id.*

4

### 2. Collateral Estoppel Involves a Substantial Ground for Different Opinions.

Charter's motion established that there is a substantial ground for difference of opinion on collateral estoppel because the consensus in the federal courts, contrary to this Court's ruling, is that "a jurisdictional ruling on an issue that has been fully and fairly adjudicated is barred from subsequent challenge." *Carr v. Tillery*, 591 F.3d 909, 917 (7th Cir. 2010) (collecting cases).

The Opposition's only argument (at 16-17) otherwise is to cite Judge Feldman's comments that it was "not" for the Eastern District of Louisiana "to consider" whether Plaintiff's are "precluded in the Northern District of North Carolina" or whether "that court has jurisdiction to consider such claims." *Creasy v. Charter*, 2020 WL 7646640, at *2 (E.D. La. Dec. 23, 2020). But these comments are irrelevant to whether a substantial ground for difference of opinion exists on collateral estoppel because Judge Feldman expressly refused to say anything about the merits of this issue, given it was not raised to him. The court instead rightly decided that it would not issue an advisory opinion on questions not before it.

The Opposition's argument also entirely ignores that there is a substantial ground for different opinions on whether collateral estoppel precludes the litigation of two distinct questions: (1) Was the robocall restriction enforceable prior to the severance of the government debt exception? and (2) Is the effective date of severance for purposes of determining what claims are enforceable the date of the Supreme Court's ruling (as Justice Kavanaugh stated) or the date of the Fourth Circuit's severance a year earlier?

It is undisputed that Judge Feldman decided the first question and held that Plaintiff and putative class's claims predating the Supreme Court's decision *AAPC* are invalid, thus depriving the court of subject matter jurisdiction. The Court here nevertheless reached the opposite conclusion on the same issue. *Compare Creasy v. Charter*, 489 F. Supp. 3d 499, 511 (E.D. La. 2020) (all claims predating *AAPC* invalid) with *Hogans v. Charter*, 2021 WL 4391226 (E.D.N.C.

5

Sept. 24, 2021) (all claims valid, *even those predating the Fourth Circuit's 2019 severance decision in AAPC*).  That is precisely the type of "inconsistent decision" collateral estoppel is meant to prevent.  *Riddick v. City of Norfolk*, 784 F.2d 521, 531 (4th Cir. 1986).  A substantial ground for different opinions thus exists on Court's collateral estoppel decision.  *See, e.g.*, *Barna v. 2,000 Metric Tons of Abandoned Steel*, 410 F. App'x 716, 721 (4th Cir. 2011) (holding that collateral estoppel applies to a "question of subject matter jurisdiction" decided elsewhere).

The second question—whether collateral estoppel precludes Plaintiff from raising for the first time here the argument that the Fourth Circuit's 2019 decision in *AAPC* revives some claims—likewise demonstrates a substantial ground for different opinions.  The Fourth Circuit has held that collateral estoppel precludes the relitigation of an issue "where plaintiff had a fair opportunity" to make "arguments" regarding that issue the "first time."  *S.E.C. v. Farkas*, 557 F. App'x 204, 207 (4th Cir. 2014) (quotation omitted).  A "plaintiff" thus "cannot rely on new theories" and "arguments to overcome collateral estoppel."  *Id.* (quotation omitted).

But that is precisely what the Court held Plaintiff can do here.  Plaintiff had several "fair opportunities" to argue in her prior action that the Fourth Circuit's decision in *AAPC* precluded a broad ruling that the robocall restriction was unenforceable before the Supreme Court's severance in *AAPC*.  Charter's motion to dismiss before Judge Feldman expressly sought such a ruling, so Plaintiff was on notice to raise any arguments she wanted against it.  *Creasy v. Charter*, No. 20-CV-1199, ECF 30-1 (E.D. La. Aug. 14, 2020) (arguing on first page that TCPA robocall restriction was "entirely unenforceable" until Supreme Court's *AAPC* decision).  Plaintiff could have argued that the court should narrowly cabin any ruling that claims predating *AAPC* are invalid because the analysis may be different elsewhere.  But she did not do that.  She likewise did not raise this argument in a motion for reconsideration after Judge Feldman made his decision.  Nor did she appeal that decision to the Fifth Circuit, much less raise the argument before that court.  Instead,

6

she let her appeal deadline lapse and now raises here "new theories" in an attempt to "overcome collateral estoppel." *Farkas*, 557 F. App'x at 207. That, the Fourth Circuit has held, she "cannot" do. *Id.* This Court's novel ruling otherwise presents a substantial ground for different opinions.[1]

### 3. An Appeal on Collateral Estoppel Would Materially Advance the Case.

Charter's motion established that an appeal on collateral estoppel will materially advance the ultimate termination of this litigation because if the Fourth Circuit agrees that collateral estoppel applies, Plaintiff's case will end, thus eliminating protracted and expensive relitigation. Plaintiff's only response is to cite an unpublished case from the 1980s, which held that an interlocutory appeal should not be granted on whether "genuine issues of material fact" precluded summary judgment because that would "embroil[]" the Court of Appeal in "factual details." *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438 (4th Cir. 1989). But the opposite is true here. As discussed above at III.1, collateral estoppel presents "a narrow question of pure law whose resolution will be completely dispositive of the litigation." *Id.* That "kind of question" is "best adapted to discretionary interlocutory review," as Plaintiff's own case confirms. *Id.*

## IV. WHETHER *AAPC* COMPELS DISMISSAL SHOULD BE CERTIFIED

All the requirements to certify an appeal on whether *AAPC* compels dismissal are satisfied.

### 1. *AAPC* Involves a Controlling Question of Law.

Charter's motion established that whether *AAPC* precludes subject matter jurisdiction presents a controlling question of law because if Charter prevails, the entire case will be dismissed.

Plaintiff's sole response is that *AAPC* does not present a controlling question because it does not preclude claims regarding speech that occurred after the Fourth Circuit's 2019 decision in that case. But this argument presumes that the Fourth Circuit's decision (which was at all times

---

[1] As discussed more below at IV.1, there is a substantial ground for different opinions on whether the Fourth Circuit's 2019 opinion in *AAPC* has any effect on Plaintiff's claims.

7

on appeal) *resolved* the content discrimination rendering the TCPA's robocall restriction invalid before the Supreme Court severed the government debt exception that created the First Amendment violation. It did not, Charter contends, including because only the Supreme Court could sever the exception with finality. Until it did so, the TCPA's robocall restriction was invalid because it unconstitutionally favored government speech in other circuits, in the state courts of this Circuit, and, according to the Supreme Court itself, in even the *federal* courts in this circuit. *See* ECF 57 at 15. Indeed, according to the *AAPC* plurality, the unconstitutional exception continued to insulate government debt collectors from liability everywhere until the Supreme Court severed the exception. *AAPC*, 140 S. Ct. at 2355 n.12 (explaining that "our decision means the end of the government-debt exception," so "no one should be penalized or held liable for making robocalls to collect government debt" until *after* the Supreme Court's decision). If Charter is correct, *all* of Plaintiff's claims must be dismissed. *AAPC* thus presents a "completely dispositive" controlling question of law that should be certified. *Fannin*, 873 F.2d 1438.

In any event, *AAPC* presents, at a minimum, a controlling question that would eliminate the claims of thousands of putative class members covering three out of four years of the class period. So even if the date of the Fourth Circuit's decision had any significance, *AAPC* is dispositive of the entire claims of many persons. That alone presents a controlling question of law that should be certified, as Charter explained. ECF 57 at 16. *See also In re Microsoft Corp.*, 274 F. Supp. 2d at 742 (certifying collateral estoppel because even if not completely dispositive, it "control[ed] many aspects of the proceedings in substantial respects," including the "scope of discovery" and "evidence" in a "consumer class action"). The Opposition failed to respond to this point, thus conceding it.

8

## 2. *AAPC* Involves a Substantial Ground for Different Opinions.

Charter's motion established that a substantial ground for different opinions exists on whether *AAPC* compels dismissal, as Supreme Court decisions, the Sixth Circuit's reversal in *Lindenbaum*, and district court decisions—including this Court's order reaching the opposite conclusion as Judge Feldman about whether Plaintiff has any valid claims—all show.

Plaintiff responds (at 7-16) by listing cases addressing whether subject matter jurisdiction exists during the period the robocall restriction, with the government debt exception, violated the First Amendment. But the Court cannot not merely tally the results, as the case Plaintiff cites confirms: This Court's "duty" is to "analyze" the substance of the "arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." ECF 62 at 7 (quoting *Wyeth*, 703 F. Supp. 2d at 527 (emphasis omitted)). Tallying results is especially inappropriate because many of the cases Plaintiff lists have no analysis whatsoever and merely adopt the flawed—or in some instances non-existent—reasoning of other decisions in what was effectively a judicial domino effect. Indeed, the first decision adopting Plaintiff's position, *Abramson v. Federal Insurance Company*, contained no independent reasoning of its own and instead "adopt[ed]" the "reasoning" of other courts that never even considered the issue. 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020). And as discussed more below at 12, subsequent cases did not analyze the relevant issues or the necessary results of adopting Plaintiff's position, which show why it cannot be correct.

The Court should instead "analyze" the substance of the "arguments." *Wyeth*, 703 F. Supp. 2d at 527. Several sources, including the Supreme Court, the Sixth Circuit's disagreement with the district court in *Lindenbaum*, and this Court's disagreement with Judge Feldman, confirm that a substantial ground for different opinions exists on whether *AAPC* compels dismissal.

9

Starting with the Supreme Court, the fractured plurality in *AAPC* shows a substantial ground for different opinions. In non-binding dicta that only two other justices joined, Justice Kavanaugh remarked in a footnote that, in his view, *AAPC* did "not negate the liability of parties who made robocalls covered by the robocall restriction after the effective date of the 2015 government debt exception." 140 S. Ct. at 2355 n.12. At least two Justices disagree with that (and this Court's decision siding with Justice Kavanaugh). As Justice Gorsuch explained in a concurrence that Justice Thomas joined, permitting liability under the TCPA's robocall restriction when it was "admittedly unconstitutional" would "wind up endorsing the very same kind of content discrimination we [i.e., the majority] say we are seeking to eliminate." *Id.* 2366. This disagreement among justices alone shows a substantial ground for different opinions on whether *AAPC* compels dismissal. This Court's order said as much, noting that "three possible answers" exist to the question of "retrospective liability" left unanswered after *AAPC*. ECF 54 at 17.

The Sixth Circuit's reversal in *Lindenbaum* likewise confirms that a substantial ground for different opinions exists. There, the district court held that it "lacks jurisdiction" over claims alleging violations of the TCPA's robocall restriction "at the time" it "was unconstitutional" because the court "cannot wave a magic wand and make that constitutional violation disappear" (agreeing with Justice Gorsuch in *AAPC*). *Lindenbaum v. Realgy, LLC*, 497 F. Supp. 3d 290, 299 (N.D. Ohio 2020). In a short opinion that did not address the arguments made or the unconstitutional results that necessarily follow from its decision (discussed more below, at 12), the Sixth Circuit reversed, reasoning only that *AAPC*'s decision to *prospectively* preserve the TCPA's robocall restriction by severing the unconstitutional portion of it must also apply *retroactively*. 13 F.4th 524, 530 (6th Cir. 2021). That decision is wrong and contrary to binding Supreme Court decisions on severance, as Charter explained in its motion. ECF 57 at 11-13 (discussing, for example, *Grayned v. City of Rockford*, 408 U.S. 104 (1972) and *Sessions v.*

10

*Morales-Santana*, 137 S. Ct. 1678 (2017)). In any event, the Sixth Circuit's reversal of district court in *Lindenbaum* further shows a substantial ground for different opinions on whether claims based on a statute that was unconstitutional at the time of the alleged violations can proceed.

A petition for certiorari has now been filed seeking Supreme Court review of the Sixth Circuit's decision. The Solicitor General of the United States intends to file an opposition to petition (as opposed to waiving a response). *Realgy v. Lindenbaum*, Supreme Court Case No. 21-866, Motion to Extend Time (Dec. 15, 2021) (Solicitor General requesting extension to "complete preparation of the government's response" to petition for certiorari). That only happens in the rare cases where the Solicitor General's office believes that a certiorari petition is meritorious enough to warrant a substantive response.[2] This too confirms a substantial ground for different opinions on whether Plaintiff can proceed. Indeed, the district courts continue to struggle with *AAPC*, even with the domino effect in Plaintiff's favor. *See, e.g.*, *Rease v. Charter*, No. 20-CV-150, ECF 104 (D. Conn. January 6, 2022) (setting hearing to discuss impact of *Lindenbaum* certification petition on motion to dismiss TCPA claims under *AAPC* that has been pending for more than a year).

The substance of the analysis in the district court cases Plaintiff lists likewise shows a substantial ground for different opinions, as even cases siding with Plaintiff disagree in their reasons for doing so. *Compare Trujillo v. Free Energy Savings*, 2020 WL 8184336, at *5 (C.D. Cal. Dec. 21, 2020) (Justice Kavanaugh's "footnote does not provide clear or binding guidance on the issue.") *with McCurley v. Royal Seas Cruises*, 2021 WL 288164, at *2 (S.D. Cal. Jan 28, 2021) ("[T]he Court finds Justice Kavanaugh's" footnote "is not dicta and must be followed.").

---

[2] *See* https://www.mayerbrown.com/en/perspectives-events/publications/1999/01/opposing-certiorari-in-the-us-supreme-court ("The solicitor general and state attorneys general often" simply "waive" a response to certiorari when they believe the petition is "meritless").

11

Next, this Court's decision itself shows a substantial ground for different opinions. The Court squarely held that "*AAPC*['s] [severance] applies retroactively" and thus Plaintiff can assert claims based on a law that was unconstitutional at the time of the alleged violations (even *before* the Fourth Circuit's 2019 decision severing the unconstitutional provision). ECF 54 at 19. That holding is *directly contrary* to another co-equal United States District Court's holding *on the same issue on the same claims brought by the same Plaintiff against the same Defendant*, as the Court's order acknowledged. ECF 54 at 7-8 (discussing Judge Feldman's judgment in the Eastern District of Louisiana reaching the opposite conclusion as this Court).

Finally, cases on which Plaintiff relies, including the Sixth Circuit's opinion in *Lindenbaum*, do not address the unconstitutional results that follow from Plaintiff's position. Nor does this Court's order. As explained in Charter's motion, Plaintiff's position would allow legislatures to enact exceptions to the TCPA—or another law—and then enforce that restriction against disfavored speakers. Meanwhile, favored speakers would be exempt until the date of severance. Before severance, a law could thus favor the speech of some speakers over others in plain violation of the First Amendment, as the example of abortion protestors discussed in Charter's motion highlights. ECF 57 at 14; *see also Lindenbaum*, Supreme Court Case No. 21-866, Certiorari Petition at 4, 26. That creates the "very same kind of" unconstitutional "content discrimination" invaliding part of the law should "eliminate," as Justice Gorsuch observed in *AAPC*. 140 S. Ct. 2335, at 2366. This unconstitutional result that Plaintiff and no court siding with her has *ever* addressed demonstrates a substantial ground for different opinions.[3]

---

[3] The Court should not follow *Van Connor v. One Life America, Inc.*, on which Plaintiff heavily relies. 2021 WL 4272614, at *3 (D.S.C. Sept. 21, 2021). That case, like Plaintiff's Opposition, merely tallied the results of cases addressing *AAPC* without considering the substance of the issues that confirm a substantial ground for different opinions, including the conflicting statements among Supreme Court justices in *AAPC* and the unconstitutional results that follow from retroactively severing a *conduct-permitting exception* that violates the First Amendment.

12

In sum, there is a substantial ground for different opinions on whether Plaintiff can assert claims based on a law that violated the First Amendment at the time of the alleged violations. To conclude otherwise would require finding that at least six federal judges, including at least two Supreme Court justices and Judge Feldman, are unreasonable jurists.

### 3. Interlocutory Appeal on *AAPC* Would Materially Advance the Case.

Charter's motion established that an appeal on whether *AAPC* compels dismissal will materially advance the termination of the litigation because the Fourth Circuit would decide a completely dispositive threshold issue that could prevent years of costly, protracted litigation.

Plaintiff's only response is to repeat the argument that Plaintiff would still be able to assert claims arising after the Fourth Circuit's 2019 decision in *AAPC*. As discussed above at IV.1, however, that is wrong. The date of the Fourth Circuit's *AAPC* decision is irrelevant, *all* of Hogans' claims will be eliminated if Charter prevails on appeal, and the vast majority of class members' claims would be eliminated even if the Fourth Circuit's decision in *AAPC* had any effect. In any event, an interlocutory appeal on *AAPC* would decide not only a case-dispositive issue, but a constitutional question involving First Amendment rights that would affect hundreds of other cases. An appeal would thus advance the termination of not just this case, but many others.

## V. CONCLUSION

Section 1292(b)'s requirements are satisfied to certify interlocutory review. Charter's motion should be granted.

DATED: January 21, 2022. KABAT CHAPMAN & OZMER LLP

By: /s/ Ryan D. Watstein
Ryan D. Watstein
*pro hac vice*
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
(404) 400-7333 (fax)

Paul A. Grammatico
*pro hac vice*
pgrammatico@kcozlaw.com
333 S. Grand Ave., Suite 2225
Los Angeles, California 90071
(213) 493-3988
(404) 400-7333 (fax)

*Counsel for Defendant Charter Communications, Inc.*

CRANFILL SUMNER & HARTZOG LLP

By: /s/ Elizabeth C. King
ELIZABETH C. KING
N.C. State Bar No. 30376
101 N. 3rd Street, Suite 400
Wilmington, NC 28401
Telephone: (910) 777-6000
Facsimile: (910) 777-6111
E-mail: eking@cshlaw.com

*Local Civil Rule 83.1 Counsel for Defendant Charter Communications, Inc.*

**CERTIFICATE OF SERVICE**

This certifies that I have this day electronically filed the foregoing document in the United States District Court for the Eastern District of North Carolina, with notice of same being electronically served by the CM/ECF system, to all attorneys of record.

Wesley S. White
Law Offices of Wesley S. White
2300 E. 7th Street, Suite 101
Charlotte, NC 28204
wes@weswhitelaw.com

Michael L. Greenwald
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
mgreenwald@gdrlawfirm.com

| | |
|---|---|
| Dated: January 21, 2021. | KABAT CHAPMAN & OZMER LLP |
| | By: /s/ Ryan D. Watstein |
| | Ryan D. Watstein |
| | *pro hac vice* |
| | rwatstein@kcozlaw.com |
| | 171 17th Street NW, Suite 1550 |
| | Atlanta, Georgia 30363 |
| | (404) 400-7300 |
| | (404) 400-7333 (fax) |
| | |
| | *Counsel for Defendant Charter Communications, Inc.* |